THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| S&A FARMS, INC., <br><br> Plaintiff, <br> v. <br><br> FARMS.COM, INC. and FARMS.COM RISK MANAGEMENT, LIMITED, <br><br> Defendants. | No. 4:09-cv-00497 <br><br><br> **DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

COME NOW the Defendants, Farms.com, Inc. and Farms.com Risk Management, Limited, and, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56(a)(2), hereby submit the following Brief in Support of Motion for Summary Judgment:

**TABLE OF CONTENTS:**

**I.  BACKGROUND FACTS AND PROCEDURAL HISTORY.** .................................... 2

**II. LEGAL ARGUMENT.** ............................................................................................. 3

    **A.** Standards for Ruling on a Motion for Summary Judgment. ........................... 3

    **B.** Farms.com, Inc is Entitled to Judgment as a Matter of Law on all Claims Asserted Against It by Plaintiff in the Above-Captioned Lawsuit. .................. 5

    **C.** Plaintiff has Failed to Prove the Causation and Actual Damages Necessary to Recover Under Its Commodity Exchange Act Violations Cause of Action. 6

    **D.** Plaintiff's Breach of Fiduciary Duty, Negligence and Misrepresentation Causes of Action are Barred by the Economic Loss Doctrine. ....................... 8

    **E.** Plaintiff's Breach of Fiduciary Duty Cause of Action Fails as a Matter of Law. ............................................................................................................... 11

    **F.** Plaintiff's Misrepresentation Cause of Action Fails as a Matter of Law. ...... 13

    **G.** Plaintiff's Alleged Damages are Insufficient as a Matter of Law. ................. 16

**III. PRAYER FOR RELIEF.** ......................................................................................... 19

I.  **BACKGROUND FACTS AND PROCEDURAL HISTORY.**

Plaintiff S&A Farms, Inc. ("S&A") is an Iowa corporation that was formed in 1992. [Defendants' Statement of Material Facts in Support of Motion for Summary Judgment ("DSMF"), ¶ 1]. Scott and Abbie Renaud are the sole officers, directors and shareholders of S&A. [DSMF, ¶ 2]. Scott Renaud is the sole employee of S&A. [DSMF, ¶ 3]. S&A is in the business of producing and selling corn, soybeans and hogs. [DSMF, ¶ 4].

In 2007, Scott Renaud was introduced to Victor Aideyan, the Senior Consultant / Manager for Farms.com Risk Management, Ltd. ("FRML"), through Howard Vroom, a local feed salesman. [DSMF, ¶ 5]. In September of 2007, Howard Vroom set up a meeting between Scott Renaud, Victor Aideyan and Jack Ticky, another employee of FRML, at the FRML office in Ames, Iowa. [DSMF, ¶ 6]. In attending the meeting, Scott Renaud wanted Victor Aideyan and Jack Ticky to explain how FRML could help provide risk management services in relation to the corn purchased by S&A to feed S&A's hogs. [DSMF, ¶ 7].

On or about September 17, 2007, Victor Aideyan and Scott Renaud executed a Price Risk Management Service Letter (the "Contract"), pursuant to which FRML agreed to provide, and S&A agreed to purchase, Consulting Services related to the corn inputs and hog outputs involved in S&A's operation. [DSMF, ¶ 11]. On or about September 20, 2007, Victor Aideyan sent an External Memorandum to Scott and Abbie Renaud outlining in more detail the services that would be provided by FRML pursuant to the Contract between the parties. [DSMF, ¶ 12]. On or about September 19, 2007, FRML sent an invoice to Scott and Abbie Renaud requesting payment in the amount of $2,000.00 due pursuant to the Contract between the parties. [DSMF, ¶ 13]. On or about September 20, 2007, S&A sent a check for $2,000.00 to FRML in satisfaction of the September 19, 2007 Invoice. [DSMF, ¶ 14]. The check was made out to Farms.com Risk

Management. [DSMF, ¶ 14].[1]

Shortly after the September 2007 meeting between Scott Renaud, Victor Aideyan, Jack Ticky and Howard Vroom, Scott Renaud established and opened a commodities trading account with MF Global, Inc. on behalf of S&A. [DSMF, ¶ 17]. Only Scott Renaud was authorized to make trades through S&A's commodities trading account with MF Global, Inc. [DSMF, ¶ 18]. Scott Renaud would discuss potential trades and positions with Victor Aideyan, and then Scott Renaud would call MF Global, Inc. and actually execute the trades. [DSMF, ¶ 19]. On occasion, Victor Aideyan would participate in the phone call to MF Global, Inc. to ensure that Scott Renaud accurately communicated the trade S&A wished to make. [DSMF, ¶ 19].

Victor Aideyan left FRML in September of 2008. [DSMF, ¶ 20]. After Victor Aideyan left FRML, Maurizio Agostino provided limited services to S&A on behalf of FRML. [DSMF, ¶ 21]. As of February 24, 2009, S&A unilaterally liquidated its positions and stopped obtaining and relying on advice from FRML. [DSMF, ¶ 23].

Plaintiff, S&A Farms, Inc. (hereinafter "S&A" or "Plaintiff") filed the Complaint in the above-captioned lawsuit on December 8, 2009. [Complaint, p.1]. The Complaint names Farms.com, Inc. ("FI") and FRML as Defendants. [Complaint, p.1]. The Complaint contains the following four causes of action, all of which are asserted against both Defendants: Count I – Commodity Exchange Act Violations; Count II – Breach of Fiduciary Duty; Count III – Negligence; and Count IV – Misrepresentation. [Complaint, ¶¶ 16-51].

## II.   LEGAL ARGUMENT.

### A.   Standards for Ruling on a Motion for Summary Judgment.

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[1] Another invoice and check were sent in March and April 2008 respectively from and to FRML. [DSMF, ¶¶15-16].

genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Smithco Manufacturing, Inc. v. Haldex Brake Products Corporation, 708 F. Supp. 2d 816, 819 (N.D. Iowa 2010) (quoting former Fed. R. Civ. P. 56(c)).  Under the newly revised version of Federal Rule of Civil Procedure 56, the standard for obtaining summary judgment remains the same.  See Fed. R. Civ. P. 56(a) (stating "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

"A fact is material when it 'might affect the outcome of the suit under the governing law.'"  Smithco Manufacturing, Inc., 708 F. Supp. 2d at 819 (quoting Johnson v. Crooks, 326 F.3d 995, 1005 (8th Cir. 2003)).  "An issue of material fact is genuine if it has a real basis in the record or when 'a reasonable jury could return a verdict for the nonmoving party on the question.'"  Id. (citing Hartnagel v. Norman, 953 F.2d 394, 395 (8th Cir. 1992); quoting Woods v. Daimler Chrysler Corp., 409 F.3d 984, 990 (8th Cir. 2005)).  At the summary judgment stage, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  Scott v. Harris, 550 U.S. 372, 380 (2007).

To successfully resist a motion for summary judgment, "the nonmoving party must present sufficient evidence for a reasonable trier of fact to return a verdict in his or her favor."  Id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).  Once the moving party has carried its burden under Federal Rule of Civil Procedure 56, the nonmoving party "'must do more than simply show that there is some metaphysical doubt as to the material facts.'"  Scott, 550 U.S. at 380 (quoting Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).  The "mere existence of *some* alleged factual dispute between the parties" will not otherwise defeat a proper motion for summary judgment.  Id. (quoting Anderson, 477 U.S. at

4

247-48). Under these standards, the Court should enter summary judgment in favor of Defendants on all of Plaintiff's causes of action for the reasons stated below.

> **B.     Farms.com, Inc is Entitled to Judgment as a Matter of Law on all Claims Asserted Against It by Plaintiff in the Above-Captioned Lawsuit.**

As discussed above, the Defendants named in the above-captioned lawsuit are FI and FRML. [Complaint, p.1]. FRML is a Canadian Federal Corporation that is engaged in active business at the present date. [DSMF, ¶ 52]. FI, on the other hand, is a North Carolina corporation that ceased operations in active business in 2000 when all of its assets were sold to, and it was merged with, Farms.com, Ltd. ("FL"). [DSMF, ¶¶ 46-47].

Farms.com, Ltd. ("FL") is a Delaware corporation that was formed in 2000 and is engaged in active business at the present date. [DSMF, ¶ 48]. FL and FRML are two separate companies. [DSMF, ¶ 51]. FL has no investment or ownership interest in FRML. [DSMF, ¶ 49]. Rather, EHarvest.com, Inc. is the 100 percent shareholder of FRML. [DSMF, ¶ 50]. Finally, FL is not a party to the above-captioned lawsuit, nor is EHarvest.com, Inc. [Complaint, p.1].

The undisputed evidence in the record shows that all interactions between Plaintiff and Defendants occurred solely between Plaintiff and representatives or employees of FRML. The Contract was executed between Plaintiff and FRML. [DSMF, ¶ 11]. Victor Aideyan and Maurizio Agostino are employees of FRML, not of FI. [DSMF, ¶ 22]. Further, Plaintiff knew that it was dealing with FRML because that is the entity to which Plaintiff's checks were made out and invoices came from. [DSMF, ¶¶ 13-16]. Because FI ceased existence in 2000 and never had any interaction with Plaintiff, FI cannot be held liable to Plaintiff in any manner. Accordingly, FI is entitled to judgment as a matter of law on all claims asserted against it by Plaintiff in the above-captioned lawsuit.

### C. Plaintiff has Failed to Prove the Causation and Actual Damages Necessary to Recover Under Its Commodity Exchange Act Violations Cause of Action.

In Count I of the Complaint, Plaintiff asserted a Commodity Exchange Act ("CEA") Violations cause of action against Defendants. [Complaint, ¶¶ 16-26]. Such cause of action is based upon Defendants' alleged failure to register with the Commodities Futures Trading Commissions ("CFTC") as a Commodity Trading Advisor[2] ("CTA").[3] [Complaint, ¶ 18]. The CEA provides a private right of action for violation thereof. Pursuant to 7 U.S.C. section 25(a):

> (1) Any person (other than a registered entity or registered futures association) who violates this chapter or who willfully aids, abets, counsels, induces, or procures the commission of a violation of this chapter shall be liable for actual damages resulting from one or more of the transactions referred to in subparagraphs (A) through (D) of this paragraph and caused by such violation to any other person—
> (A) who received trading advice from such person for a fee;
> (B) who made through such person any contract of sale of any commodity for future delivery (or option on such contract or any commodity); or who deposited with or paid to such person money, securities, or property (or incurred debt in lieu thereof) in connection with any order to make such contract;
> (C) who purchased from or sold to such person or placed through such person an order for the purchase or sale of—
> > (i) an option subject to section 6c of this title (other than an option purchased or sold on a registered entity or other board of trade);
> > (ii) a contract subject to section 23 of this title; or
> > (iii) an interest or participation in a commodity pool; or

---

[2] "Commodity Trading Advisor" is defined in 7 U.S.C. section 1a(6) as "any person who:
   (i) for compensation or profit, engages in the business of advising others, either directly or through publications, writings, or electronic media, as to the value of or the advisability of trading in:
      (I) any contract of sale of a commodity for future delivery made or to be made on or subject to the rules of a contract market or derivatives transaction execution facility;
      (II) any commodity option authorized under section 6c of this title; or
      (III) any leverage transaction authorized under section 23 of this title; or
   (ii) for compensation or profit, and as part of a regular business, issues or promulgates analyses or reports concerning any of the activities referred to in clause (i)."

[3] Pursuant to the Commodity Exchange Act ("CEA"), "[a]ny commodity trading advisor or commodity pool operator, or any person who contemplates becoming a commodity trading advisor or commodity pool operator, may register under this chapter by filing an application with the Commission." 7 U.S.C. § 6n(1). Please note, the foregoing statutory provision makes registration as a CTA with the CFTC permissive, as it uses the word "may" and not the word "shall". By failing to consider such issue at length in this Brief, Defendants in no way waive the right to argue that they were not required to register as CTAs with the CFTC at later stages in the litigation of this lawsuit.

6

> (D) who purchased or sold a contract referred to in subparagraph (B) hereof if the violation constitutes a manipulation of the price of any such contract or the price of the commodity underlying such contract.

7 U.S.C. § 25(a). Thus, in order to prevail on a private right of action for a violation of the CEA, Plaintiff is required to prove that Defendants violated a provision of the CEA; that Plaintiff suffered "actual damages" that were caused by such violation; and that Plaintiff's "actual damages" resulted from one of the transactions listed in 7 U.S.C. section 25(a)(1)(A) – (D). See 7 U.S.C. § 25(a); see also Ping He Hai Nam Company Limited ("Ping He") v. Nonferrous Metals U.S.A. Inc., 22 F. Supp. 2d 94, 107 (S.D.N.Y. 1998) (opinion vacated in part on other grounds).

Regardless of whether Plaintiff would be able to establish that Defendants violated the CEA by failing to register as CTAs with the CFTC,[4] Plaintiff will not be able to prove that such violation caused it "actual damages." See 7 U.S.C. § 25(a)(1). "The term 'actual damages' has been applied by courts in a straightforward manner to require a showing of actual injury caused by the violation." Ping He, 22 F. Supp. 2d at 107 (citing Wigwood v. Chicago Mercantile Exchange, 981 F.2d 1510, 1521-22 (7th Cir. 1992)). Accordingly, in the case at bar, Plaintiff is required to prove that it suffered an actual injury that was caused by Defendants' failure to register as CTAs with the CFTC. From a legal standpoint, such a showing is nearly impossible. See Ping He, 22 F. Supp. 2d at 108 (stating "[a]s a logical matter, it is unlikely that any private litigant could show 'actual damages' flowing from a § 4d violation because, as courts and the CFTC have recognized, an FCM's unregistered status, in and of itself, does not cause another financial damage."); Marshall v. Green Giant Co., 942 F.2d 539, 546 (8th Cir. 1991) (stating "[a] party does not suffer damage merely by dealing with an unregistered FCM; failure to register, without more, does not cause pecuniary loss."); Hudson v. Wilhelm, 651 F. Supp. 1062, 1066-68 (D. Col. 1987)).

---

[4] See footnote 3.

7

Such a showing is also directly contradicted by the undisputed evidence in the record. During his deposition, Scott Renaud testified that he does not know what the CEA is, that he never asked Victor Aideyan if he was registered as a CTA, and that neither the CEA nor the fact that Victor Aideyan was not registered as a CTA had any bearing on his decision to do business with FRML on behalf of S&A. [DSMF, ¶¶ 8-10]. His testimony was further corroborated by the testimony of Nicholas Zagotta, Plaintiff's expert witness, who testified that he is not aware as to whether FI or FRML was registered as a CTA under the CEA, and that he did not factor in or consider FI's and/or FRML's registration status in rendering his opinion on Plaintiff's alleged damages. [DSMF, ¶¶ 37-38].

In sum, it is clear that Plaintiff has failed as a matter of law to prove the causation and "actual damages" necessary for it to recover under its CEA Violations cause of action. Accordingly, Defendants are entitled to judgment as a matter of law on such cause of action.

> **D.   Plaintiff's Breach of Fiduciary Duty, Negligence and Misrepresentation Causes of Action are Barred by the Economic Loss Doctrine.**

Plaintiff's Complaint also contains the tort causes of action of Breach of Fiduciary Duty, Negligence and Misrepresentation. [Complaint, ¶¶ 27-51]. Because the relationship between the Plaintiff and FRML arises out of and is based upon the Contract executed between them, the Economic Loss Doctrine, as applied under Iowa law, bars Plaintiff's tort claims.

"The economic loss doctrine was conceived to prevent litigants with contract claims from litigating them inappropriately as tort claims." <u>Van Sickle Construction Company v. Wachovia Commercial Mortgage, Inc.</u>, 783 N.W.2d 684, 693 (Iowa 2010). Under Iowa law:

> The economic loss doctrine has been characterized as "a generally recognized principle of law that plaintiffs cannot recover in tort when they have suffered only economic harm." <u>Richards v. Midland Brick Sales Co</u>, 551 N.W.2d 649, 650 (Iowa App. 1996). The rationale for this limitation on recovery is that "[p]urely economic losses usually result from the breach of a contract and should

> ordinarily be compensable in contract actions, not tort actions." Id. at 651. Accordingly, "we ultimately look to the policies behind tort law and contract law to determine whether a loss is compensable in tort or in contract."

Id. at 692-93.

> We agree that the line to be drawn is one between tort and contract rather than between physical harm and economic loss. When, as here, the loss relates to a consumer or user's disappointed expectations due to deterioration, internal breakdown or non-accidental cause, the remedy lies in contract. Tort theory, on the other hand, is generally appropriate when the harm is a sudden or dangerous occurrence, frequently involving some violence or collision with external objects, resulting from a genuine hazard in the nature of the product defect.

Determan v. Johnson, 613 N.W.2d 259, 262 (Iowa 2000) (quoting Nelson v. Todd's Ltd., 426 N.W.2d 120, 123 (Iowa 1988)).

> The line between tort and contract must be drawn by analyzing interrelated factors such as the nature of the defect, the type of risk, and the manner in which the injury arose. These factors bear directly on whether the safety-insurance policy of tort law or the expectation-bargaining protection policy of warranty law is most applicable to a particular claim.

Id. (quoting Nelson, 426 N.W.2d at 124-25).

The three tort causes of action asserted by Plaintiff in the case at bar arise out of the contractual relationship between S&A and FRML, pursuant to which S&A contracted with FRML for FRML to provide Consulting Services to S&A in relation to the risk associated with the corn inputs and hog outputs involved in S&A's operation. [DSMF, ¶ 11]. Plaintiff is claiming that its commodities trading account with MF Global, Inc. decreased by $1,040,958.75 in the time that FRML advised Plaintiff in relation thereto. [DSMF, ¶¶ 27-28]. There is no doubt that such decrease is purely economic in nature, as the $1,040,958.75 "net loss" figure was determined by merely taking the amount of money that was deposited by S&A into the commodities trading account, and then subtracting both the amount of money that was withdrawn from the commodities trading account and the amount of money remaining in the

account on February 24, 2009 when Plaintiff terminated its contractual relationship with FRML. [DSMF, ¶ 28]. Further, Mr. Zagotta, Plaintiff's expert witness, testified that Plaintiff's alleged "net loss" resulted from what he considered to be a speculative and overtraded investment strategy. [DSMF, ¶ 29]. Thus, in essence, Plaintiff is claiming that FRML failed to properly advise it in relation to its commodities trading account with MF Global, Inc. In other words, Plaintiff is claiming that it is dissatisfied with the way FRML provided its Consulting Services under the Contract. Stated yet another way, Plaintiff is claiming that FRML breached the Contract between the parties by failing to provide adequate and advisable Consulting Services.

The Iowa Supreme Court has uniformly held that where damages result from disappointed expectations or loss of benefit of bargain that arose from a contractual relationship, such damages must be recovered in contract, not in tort. See American Fire & Casualty Co. v. Ford Motor Co., 588 N.W.2d 437, 439 (Iowa 1999) (stating "defects of suitability and quality are redressed through contract actions."); Tomka v. Hoechst Celanese Corp., 528 N.W.2d 103, 107 (Iowa 1995) (stating "contract law protects a purchaser's expectation interest that the product received will be fit for its intended use."); Nelson, 426 N.W.2d at 124 (stating "[w]hen a buyer loses the benefit of his bargain because the goods are defective, he has his contract to look to for remedies. Tort law need not, and should not, enter the picture."). Although Plaintiff could have asserted a Breach of Contract cause of action against Defendants in the Complaint, it failed to do so.[5] Because Plaintiff's alleged "net loss" is purely economic and arises solely from its disappointed expectations in relation to FRML's performance under the Contract, the Economic Loss Doctrine precludes Plaintiff from recovering such damages in tort. Accordingly, Plaintiff's Negligence, Breach of Fiduciary Duty and Misrepresentation causes of action fail as a matter of

---

[5] Plaintiff admitted it executed a contract with Defendants. [Complaint, ¶5].

law.[6]  As a result, Defendants are entitled to summary judgment on such causes of action.

### E. Plaintiff's Breach of Fiduciary Duty Cause of Action Fails as a Matter of Law.

Plaintiff asserted a Breach of Fiduciary Duty cause of action against Defendants in Count II of the Complaint.  [Complaint, ¶¶ 27-36].  In doing so, Plaintiff made the following allegations:

> 28.  Defendants offered S & A commodities trading advice.  In marketing themselves, Defendants represented to S & A that they had education, training and experience above that of S & A.
> 29.  Defendants represented to S & A that their superior abilities enabled them to provide essential price and risk management advice.
> 30.  Defendants created a relationship of trust and confidence in their abilities based on their represented experience, education and training.
> 31.  S & A relied upon the alleged superior price and risk management ability of Defendants.
> 32.  S & A did not have nearly the same education, training or experience as Defendants represented they had.
> 33.  Defendants dominated the relationship with regard to price and risk management advice.
> 34.  Defendants breached their fiduciary duty.
> 35.  Defendants breach of its fiduciary duty was a proximate cause of damage to S &A.
> 36.  S & A was financially injured in an amount greatly exceeding the jurisdictional amount.

[Complaint, ¶¶ 28-36].  During discovery, Defendants propounded a contention interrogatory on Plaintiff specifically requesting that Plaintiff "identify and provide all facts and documents that support each and every one of the contentions made in Paragraphs 27 through 36 of the

---

[6] No appellate court in Iowa has ever held that the Economic Loss Doctrine does not apply to a Breach of Fiduciary Duty or Misrepresentation (i.e., Fraudulent Nondisclosure) cause of action under Iowa law.  The only relevant precedent on such issue comes from federal court opinions in which the respective Judge issues an opinion as to how he/she thinks that the Iowa Supreme Court would rule on such issue.  There are two such opinions from the Southern District of Iowa that are applicable.  See Union County, Iowa v. Piper Jaffray & Co., Inc., --- F. Supp. 2d ---, 2010 WL 3862861, *37 (S.D. Iowa 2010) (holding that the Iowa Supreme Court would likely rule that the Economic Loss Doctrine does not apply to claims for breach of fiduciary duty) (unpublished opinion attached); Employers Mutual Casualty Company v. Collins & Aikman Floor Coverings, Inc., 2004 WL 840561, *19 (S.D. Iowa 2004) (holding that the Iowa Supreme Court would likely rule that the Economic Loss Doctrine does not apply to fraud claims) (unpublished opinion attached).  Because such opinions merely offer an educated guess as to how the Iowa Supreme Court would rule on this issue, Defendants request that the Court certify such question of state law to the Iowa Supreme Court pursuant to LR 83.  Otherwise, at the very least, Defendants maintain that the Economic Loss Doctrine bars Plaintiff's Negligence cause of action for the reasons stated herein.

Complaint as part of the claim asserted in Count II therein for Breach of Fiduciary Duty." [DSMF, ¶ 53]. In response, Plaintiff stated that "[t]he relevant facts are set forth in the Complaint." [DSMF, ¶ 53]. Accordingly, by its own admission, Plaintiff is relying solely on the facts contained in its Complaint to support its Breach of Fiduciary Duty cause of action.

In order to prevail on its Breach of Fiduciary Duty cause of action, Plaintiff has the burden of proving the following elements: (1) the existence of a fiduciary relationship; (2) Defendants breached a fiduciary duty to Plaintiff; (3) Defendants' breach of its fiduciary duty to the Plaintiff was a proximate cause of damage to the Plaintiff; and (4) the amount of damage. See Union County, Iowa, --- F. Supp. 2d ---, 2010 WL 3862861 at *17 (citing Iowa Civil Jury Instruction 3200.1) (unpublished opinion attached). Plaintiff has failed to meet such burden as a matter of law.

First, Plaintiff has put forth no evidence to support its allegation in the Complaint that "Defendants breached their fiduciary duty." [Complaint, ¶ 34]. Plaintiff has not stated or established what exactly Defendants' alleged fiduciary duty was, nor has Plaintiff put forth evidence as to how such duty was allegedly breached by Defendants. Based on its interrogatory answers, Plaintiff is solely relying on the conclusory assertions contained in the Complaint. Further, Plaintiff's Breach of Fiduciary Duty cause of action was never discussed in any of the depositions taken in relation to this lawsuit. At this stage in the litigation, Plaintiff is not allowed to rely solely on the allegations in its Complaint. See Fed. R. Civ. P. 56(c)(1) (stating "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials…"). Accordingly,

Plaintiff has failed to create a genuine issue of material fact that a duty existed or that Defendants allegedly breached any such fiduciary duty.

Second, Plaintiff has put forth no evidence to support the allegation in its Complaint that "Defendants breach of its fiduciary duty was a proximate cause of damage to S&A." [Complaint, ¶ 35]. Scott Renaud testified at his deposition that he did not know what Plaintiff's damages are, that he would not be testifying as to Plaintiff's damages at trial, and that he is relying solely on Plaintiff's expert, Mr. Zagotta, to calculate and testify as to Plaintiff's damages. [DSMF, ¶¶ 24-26]. Mr. Zagotta testified in his deposition that he has no opinion as to whether Plaintiff's alleged damages were caused by either FI or FRML. [DSMF, ¶ 30]. Further, Mr. Zagotta testified that Plaintiff's alleged damages were the result of a speculative and overtraded investment strategy. [DSMF, ¶ 29]. Neither Scott Renaud nor Mr. Zagotta provided any testimony that Plaintiff's alleged damages were caused by Defendants' alleged breach of their fiduciary duty. [DSMF, ¶ 29]. Accordingly, the record wholly lacks any evidence that "Defendants' breach of its fiduciary duty was a proximate cause of damage to S & A."

In sum, Plaintiff has failed as a matter of law to provide evidence in the record to support at least two of the four elements necessary for it to prevail on its Breach of Fiduciary Duty cause of action. As a result, Defendants are entitled to summary judgment on such cause of action.

### F. Plaintiff's Misrepresentation Cause of Action Fails as a Matter of Law.

Plaintiff asserted a Misrepresentation[7] cause of action against Defendants in Count IV of the Complaint. [Complaint, ¶¶ 42-51]. In doing so, Plaintiff made the following allegations:

> 43. S & A and Defendants had a special contracted relationship for financial advice which gave rise to a duty of disclosure between S & A and Defendants.
> 44. While such relationship existed, Defendants were aware of:
>     A. Their failure to register as a CTA.

---

[7] Although labeled a "Misrepresentation" cause of action, the allegations contained thereunder lead to the conclusion that it is actually a cause of action for Fraudulent Nondisclosure.

13

      B. Their limited experience in appropriate commodities trading strategies.
      C. Their failure to disclose the risks associated with their recommended trading strategies.

45. While the relationship existed, the Defendants concealed or failed to disclose the above information.
46. The undisclosed information was material to the transaction.
47. The Defendants knowingly failed to make the disclosure.
48. The Defendants intended to deceive S & A by withholding such information.
49. S & A acted in reliance upon the Defendants' failure to disclose and was justified in such reliance.
50. The failure to disclose was a proximate cause of S & A's damage.
51. S & A was damaged financially in an amount greatly exceeding the jurisdictional amount.

[Complaint, ¶¶ 43-51]. During discovery, Defendants propounded a contention interrogatory on Plaintiff specifically requesting that Plaintiff "identify and provide all facts and documents that support each and every one of the contentions made in Paragraphs 42 through 51 of the Complaint as part of the claim asserted in Count IV therein for Misrepresentation." [DSMF, ¶ 54]. In response, Plaintiff referenced its Answer to Interrogatory No. 17, which stated that "[t]he relevant facts are set forth in the Complaint." [DSMF, ¶ 54]. Accordingly, by its own admission, Plaintiff is relying solely on the facts contained in its Complaint to support its Misrepresentation cause of action.

    In order to prevail on its Misrepresentation cause of action, Plaintiff has the burden of proving the following elements:

> (1) special circumstances existed which gave rise to a duty of disclosure between the Plaintiff and the Defendants; (2) while such relationship existed, the Defendants were aware of certain information; (3) while such relationship existed, Defendants concealed or failed to disclose certain information; (4) the undisclosed information was material to the transaction; (5) the Defendants knowingly failed to make the disclosure; (6) the Defendants intended to deceive the Plaintiff by withholding such information; (7) the Plaintiff acted in reliance upon the Defendants' failure to disclose and was justified in such reliance; (8) the failure to disclose was a cause of the Plaintiff's damage; and (9) the nature and extent of the Plaintiff's damage.

See Iowa Civil Jury Instruction 810.2. Plaintiff has failed to meet such burden as a matter of

law.

A comparison between the allegations in Paragraphs 42 through 51 of the Complaint and the above-quoted elements of Plaintiff's Misrepresentation cause of action shows that Plaintiff did nothing more than simply plead the elements of such a cause of action. Further, Plaintiff's Misrepresentation cause of action was never discussed in any of the depositions taken in relation to this lawsuit. Thus, Plaintiff is relying on nothing more than a recitation of the elements to support its Misrepresentation cause of action. Such reliance is hardly sufficient to create a genuine issue of material fact to avoid summary judgment. See Fed. R. Civ. P. 56(c)(1).

First, there is no evidence in the record to support Plaintiff's allegations that "[t]he undisclosed information was material to the transaction" or that "S & A acted in reliance upon the Defendants' failure to disclose and was justified in such reliance." [Complaint, ¶¶ 46, 49]. In fact, there is direct evidence in the record to the contrary; namely, that Scott Renaud testified that he does not know what the CEA is, that he never asked Victor Aideyan if he was registered as a CTA, and that neither the CEA nor the fact that Victor Aideyan was not registered as a CTA had any bearing on his decision to do business with FRML on behalf of S&A. [DSMF, ¶¶ 8-10].

Second, there is absolutely no evidence in the record in relation to Plaintiff's allegations that "Defendants knowingly failed to make the disclosure" or that "Defendants intended to deceive S & A by withholding such information." [Complaint, ¶¶ 47-48].

Third, the evidence in the record is directly contrary to Plaintiff's allegation that "[t]he failure to disclose was a proximate cause of S & A's damages." [Complaint, ¶ 50]. As discussed above, Mr. Zagotta testified that Plaintiff's alleged damages were the result of a speculative and overtraded investment account. [DSMF, ¶ 29]. Neither Scott Renaud nor Mr. Zagotta provided any testimony that Plaintiff's alleged damages were caused by Defendants'

failure to disclose material information.  In sum, Plaintiff has failed as a matter of law to provide evidence in the record to support at least five of the nine elements necessary for it to prevail on its Misrepresentation cause of action.  As a result, Defendants are entitled to summary judgment on such cause of action.

### G. Plaintiff's Alleged Damages are Insufficient as a Matter of Law.

Scott and Abbie Renaud[8] are the sole officers, directors and shareholders of S&A. [DSMF, ¶ 2].  Scott Renaud is the sole employee of S&A.  [DSMF, ¶ 3].  Due to Scott Renaud's deposition testimony that he did not know what Plaintiff's damages are, that he would not be testifying as to Plaintiff's damages at trial, and that he is relying solely on Plaintiff's expert, Nicholas Zagotta, to calculate and testify as to Plaintiff's damages, Plaintiff's burden to prove its damage under each of its causes of action rises and falls solely on the testimony of Mr. Zagotta. [DSMF, ¶¶ 24-26].

Mr. Zagotta testified at his deposition that Plaintiff's trading account suffered a "net loss" of $1,040,958.75 from September 20, 2007 to February 24, 2009.  [DSMF, ¶ 27].  In calculating the alleged "net loss" figure, Mr. Zagotta merely took the amount of money that S&A deposited into its commodities trading account with MF Global, Inc. ($1,445,000.00), subtracted out the amount of money that was withdrawn from the account ($174,500.00), and then from that number ($1,270,500.00) subtracted out the amount remaining in the account ($229,541.25) as of February 24, 2009.  [DSMF, ¶ 28].  In essence, S&A's account decreased over time so there was a "net loss".  After making his "net loss" calculation, Mr. Zagotta opined the alleged speculative

---

[8] In her deposition, Abbie Renaud testified that she has little knowledge of the commodity trading accounts with MF Global, Inc. other than knowing they existed. [DSMF, ¶ 55].  Abbie Renaud has never placed a trade on either of the accounts. [DSMF, ¶ 56].  Abbie Renaud also testified that she has never spoken to S&A's expert, namely Nicholas. Zagotta. [DSMF, ¶ 57].  She also testified that she told Scott Renaud that he should stop trading on the accounts when they were beginning to lose money. [DSMF, ¶ 58].  She testified that ultimately it was Scott's choice to continue to trade. [DSMF, ¶ 59].

and overtraded investment strategy led to the roughly one million dollar loss. [DSMF, ¶ 29].

Interestingly, Mr. Zagotta has never testified that S&A was "damaged" as a result of any specific action of Defendants, nor has he provided a figure of the specific damages incurred. The only language or figure provided is the "net loss", which, again, is simply an elementary calculation of the decrease in S&A's account. There is no dispute that there was less money in S&A's account at the end of the applicable time period. However, that does not equate to a recoverable damage.

The flaws in Mr. Zagotta's testimony are numerous, and can be shown more by looking at what he did not opine to than to the opinions he actually provided. For example, Plaintiff's Complaint alleges that "S&A sustained high monetary losses as a direct result of the recommendations and professional advice offered by the Defendants." [Complaint, ¶ 15]. Yet, Mr. Zagotta does not know whether the "net loss" suffered by S&A was actually caused by either FI or FRML. [DSMF, ¶ 30]. Mr. Zagotta does not even know who came up with the trading strategy employed by S&A of which he appears to be critical. [DSMF, ¶ 31]. Mr. Zagotta also does not know what was said between S&A and Defendants or what advice was ever given. [DSMF, ¶¶ 32-34]. A chart included in Mr. Zagotta's report lists certain trades made on S&A's account. Yet, Mr. Zagotta does not know any of the advice given between Defendants and S&A on any of the dates of those trades. [DSMF, ¶ 33]. Mr. Zagotta is not privy to any of the conversations between S&A and Defendants. [DSMF, ¶ 34]. Further, Mr. Zagotta has not investigated as to whether MF Global, Inc.[9] may be responsible for causing the "net loss" suffered by S&A. [DSMF, ¶ 35]. Again, all Mr. Zagotta knows is that the account value decreased.

Mr. Zagotta did provide some alternative "trading strategies" that could have been

---

[9] MF Global, Inc. was Plaintiff's broker and MF Global, Inc. executed all of Plaintiff's trades.

17

employed in this case that he claims would have been more "simple". [DSMF, ¶ 36]. However, Mr. Zagotta provides no calculations or analysis of whether S&A would have saved any money by employing any of his proposed strategies. It is very likely that S&A would have lost money using his proposed strategies, as Mr. Zagotta did not take into account the extreme volatility that was occurring in the corn and hog markets from 2007 to 2009. In essence, Mr. Zagotta's opinion implicitly assumes that S&A would have made money utilizing his investment strategies, or at least broke even, yet Mr. Zagotta provides no evidence to support such assumptions.

In addition, Mr. Zagotta explained that a party using a hedge has two offsetting positions – a cash side and a hedged side. [DSMF, ¶ 39]. He testified that these two sides offset each other, in that a hedger such as S&A uses the gains on the cash side to make up any losses on the futures. [DSMF, ¶ 40]. Here, the "net loss" figure only accounts for the futures side. Mr. Zagotta admitted he did not compare the "net loss" to any gain that S&A had on the cash side. [DSMF, ¶ 41]. Mr. Zagotta explained the concept as follows:

> Q. What do you mean by they would generally be offset?
> A. Again, because hedges aren't perfect, the losses in the futures. If the market were to break, would have been offset not in a perfect one-quarter cent to one-quarter cent ratio on the hedge, but they would have paid less for their cash corn in their losses in the -- they would have paid less for their cash corn than they had expected to and their gains on the cash corn would have generally offset -- would have been -- the gain of the cash corn would have generally offset any of the losses on the futures.

[DSMF, ¶ 42]. Without this calculation, a jury cannot reasonably determine if any damage was even sustained.

Finally, S&A was speculating and trading in soybeans, cotton, and cattle. [DSMF, ¶ 43]. It is undisputed that Defendants did not provide trading advice on these commodities. Yet, these are included in the "net loss", or decrease in S&A's account.

Under Iowa law, "[t]he party seeking damages has the burden to prove them." Sun

Valley Iowa Lake Association v. Anderson, 551 N.W.2d 621, 641 (Iowa 1996).  Further, where there is uncertainty as to the amount of damages that Plaintiff has incurred, "a fact finder may allow recovery *provided there is a reasonable basis in the evidence from which the fact finder can infer or approximate the damages*."  Id. (emphasis added).  Here, the only evidence of any alleged damage is the alleged "net loss" incurred from September 20, 2007 to February 24, 2009.  As stated, this figure does not account for a number of items that even Mr. Zagotta admits must be considered, and it includes other items that should not be included.  In short, the "net loss" calculation does not provide a reasonable basis to approximate any damages that may have been incurred due to a specific action of the Defendants.  Instead, it is simply a figure that shows the decrease in S&A's account over time.  Decreases in account values are routine when trading commodities.  As Mr. Zagotta testified:

> Q. Is there risk involved in trading futures or options?
> A. Yes.
> Q. What types of risks are involved?
> A.  In a simple trading scenario, nobody really knows if the market is going to go up or down.  You buy it; it might go down and you sell it; it might go up.  You know, you run the risk.  It's a highly leveraged business.  You run the risk of losing multiples of money you have invested -- you have committed.  Invested is a bad word when you're talking about commodities.

[DSMF, ¶ 44].

Plaintiff has failed to show it was damaged in any regard, let alone provide "a reasonable basis in the evidence from which the fact finder can infer or approximate damages."  Id.  Plaintiff cannot sustain its burdens and Defendants are entitled to summary judgment on all of Plaintiff's causes of action.

### III.    PRAYER FOR RELIEF.

WHEREFORE, Defendants Farms.com, Inc. and Farms.com Risk Management, Limited respectfully request that the Court grant their Motion for Summary Judgment, dismiss Plaintiff's

Complaint and all of its causes of action with all costs assessed to Plaintiff, and such further relief as the Court deems equitable under the present circumstances.

Respectfully submitted,

/s/ Brian P. Rickert
Brian P. Rickert, AT0006633
Michael R. Blaser, AT0000902
Brant D. Kahler, AT0009819

BROWN, WINICK, GRAVES, GROSS,
BASKERVILLE AND SCHOENEBAUM, P.L.C.
666 Grand Avenue, Suite 2000
Des Moines, IA 50309-2510
Telephone:  515-242-2400
Facsimile:   515-323-8557
E-mail:  Rickert@brownwinick.com
          Blaser@brownwinick.com
          Kahler@brownwinick.com

ATTORNEYS FOR DEFENDANTS FARMS.COM, INC. AND FARMS.COM RISK MANAGEMENT, LIMITED

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 11th day of March, 2011, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which, pursuant to Local Rule 5.3(k)(1), will send a notice of electronic filing to the following:

Gail E. Boliver
BOLIVER & BIDWELL LAW FIRM
2414 S. Second Street
Marshalltown, Iowa 50158
Email:  boliver@marshallnet.com

William J. Bolotin
DOYLE & BOLOTIN, LTD.
200 W. Madison St., Suite 2670
Chicago, IL 60606
Email:  wbolotin@d-b-law.com

Richard A. Malm
Bridget R. Penick
DICKINSON, MACKAMAN, TYLER & HAGEN, P.C.
699 Walnut Street, Suite 1600
Des Moines, Iowa 50309-3986
Email:  rmalm@dickinsonlaw.com
         bpenick@dickinsonlaw.com

ATTORNEYS FOR PLAINTIFF S & A FARMS, INC.

/s/ Brant D. Kahler